NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PROFOOT, INC. <br><br> Plaintiff, <br><br> v. <br><br> MSD CONSUMER CARE, INC., <br><br> Defendant. | Civ. No. 11-7079 <br><br> OPINION |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter is before the Court upon MSD Consumer Care, Inc.'s motion to dismiss counts 8 and 9 of the amended complaints alleging antitrust violations. (Docket No. 108). Plaintiff ProFoot, Inc. opposes this motion. (Docket No. 120). The parties presented oral argument before the Court on October 15, 2014. Upon consideration of the parties' written submissions and oral argument, the Court will deny MSD Consumer Care's motion to dismiss for the reasons set forth below.

## **BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff ProFoot, Inc. ("ProFoot") and Defendant MSD Consumer Care, Inc. ("MSD") both manufacture and supply foot-care devices such as insoles and similar devices that fit inside a user's shoe. (Docket No. 102 at ¶¶ 1–2). Defendant's foot-care products are sold under the brand "Dr. Scholl's." (*Id.*). Plaintiff's original complaint filed on December 5, 2011 alleged that Defendant MSD Consumer Care, Inc. ("MSD") infringed a number of Plaintiff's foot-care

trademarks. (Docket No. 1 at ¶ 1.) On February 12, 2014, Plaintiff filed its First Amended Complaint ("FAC"), which added new claims, including allegations of Unlawful Monopolization and Unlawful Attempted Monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2. (Docket No. 102 at ¶¶ 212–223). On April 22, 2014, Defendant moved to dismiss the antitrust claims in the FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **LEGAL STANDARD**

When considering a Rule 12(b)(6) motion, a district court must conduct a three-part analysis: "First, the court must 'take note of the elements a plaintiff must plead to state a claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept all of plaintiff's well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiff, though the court should disregard legally conclusory allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

As the Third Circuit has explained, in the antitrust context, "a complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 569 n.14 (2007). "This 'does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*. (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted). In *West Penn*, the Third Circuit explicitly rejected the argument that "judges presiding over antitrust and other complex cases must act as 'gatekeepers,' and must subject pleadings in

such cases to heightened scrutiny" and that, in complex cases like antitrust cases, "*Twombly*'s plausibility standard functions more like a probability requirement." *Id*. Thus, here we merely apply the plausibility standard discussed in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556.

## ANALYSIS

I.     **Elements of a Section 2 Claim**

In order to state a claim for unlawful monopolization or attempted unlawful monopolization under Section 2 of the Sherman Act, a plaintiff must allege defendants have (1) "the possession of monopoly power in the relevant market" and (2) that defendants have engaged in conduct that amounts to the "willful acquisition of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306–07 (3d Cir. 2007) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). Monopoly power, the essence of the first element of Section 2 claim, is the ability to "profitably raise prices without causing competing firms to expand output and drive down prices." *Broadcom*, 501 F.3d at 307 (quoting *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005). A plaintiff can allege that a defendant has monopoly power either through "direct or circumstantial evidence, or a combination of the two." *West Penn*, 627 F.3d at 99.

Direct evidence of a defendant's monopoly power is simply evidence of "supracompetitive prices and restricted output." *Broadcom*, 501 F.3d at 307 (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) (en banc); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)). If a plaintiff can properly allege that its Section 2 claims are supported by direct evidence of monopoly power, that plaintiff need not proceed through the steps of defining the relevant market "[b]ecause market share and barriers to

entry are merely surrogates for determining the existence of monopoly power." *See Broadcom*, 501 F.3d at 307, n.3 (citing 2A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 531a (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107–08 (2d Circ. 2002); *Conwood Co., L. P. v. U.S. Tobacco Co.*, 290 F.3d 768, 783, n.2 (6th Cir. 2002); *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 937 (7th Cir. 2000).

The second element of a Section 2 claim, the use of anticompetitive conduct to acquire or maintain monopoly power, requires that a firm "attempt[ ] 'to exclude rivals on some basis other than efficiency,'" or "compete[ ] 'on some basis other than the merits.'" *West Penn*, 627 F.3d at 108 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985); *LePage's, Inc. v. 3M*, 324 F.3d 141, 147 (3d Cir. 2003). The Third Circuit has further explained:

> To run afoul of Section 2, a defendant must be guilty of illegal conduct "to foreclose competition, gain a competitive advantage, or to destroy a competitor." [*Eastman Kodak Co.*, 504 U.S. at 482–83] (*quoting United States v. Griffith*, 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236 (1948)). *See generally Lorain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). Behavior that otherwise might comply with antitrust law must be impermissibly exclusionary when practiced by a monopolist. As we said in *LePage's, Inc. v. 3M*, 324 F.3d 141, 151–52 (3d Cir. 2003), "a monopolist is not free to take certain actions that a company in a competitive (or even oligopolistic) market may take, because there is no market constraint on a monopolist's behavior." 3 Areeda & Turner, Antitrust Law ¶ 813, at 300–02 (1978)."

*United States v. Dentsply Intern., Inc.*, 399 F.3d 181, 187 (3d Cir. 2005)

## II.     Plaintiff's Allegations and their Sufficiency

As discussed above, this case began as a trademark case, and it is only now, in its FAC, that ProFoot has claimed antitrust violations. Accordingly, the majority of the allegations contained in the FAC pertain to ProFoot's trademark claims. Nonetheless, ProFoot does allege that: (a) it developed a number of foot-care products; (b) that MSD created copies of these products that it introduced into the market; (c) that MSD drove ProFoot's products out of the

market through a combination of trademark violations and improper leveraging of its relationships with retailers; and (d), that after MSD had driven ProFoot's products from the market, it raised the price of its knock off ProFoot products. (Docket No. 102 at ¶¶ 72–75, 78–83). Accepting these allegations as true and construing them in the light most favorable to ProFoot, these allegations present a plausible claim for Section 2 liability under a theory of direct evidence of monopoly power: MSD deliberately engaged in anticompetitive conduct that gave it the ability to raise prices for certain foot-care products, and, because ProFoot had been driven from the market through MSD's anticompetitive conduct, ProFoot could not expand its output. *See Broadcom*, 501 F.3d at 306–07.

More generally, ProFoot alleges that MSD deliberately adopted business strategies to drive ProFoot and similar manufacturers out of the market through a variety of techniques, including creating knock-off versions of their competitors' products. (*Id*. at ¶¶ 90–96). While such strategies may not be anticompetitive for a manufacturer with a small market share, ProFoot has alleged that MSD has a dominant market share. (*Id*. at ¶ 4). Construing these allegations in ProFoot's favor, it is at least plausible that such strategies would have an anticompetitive effect because of MSD's market share. *See Dentsply*, 399 F.3d at 187; *LePage's, Inc.* 324 F.3d at 151–152.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss will be denied. An appropriate order will follow.

>  */s/ Anne E. Thompson*
> ANNE E. THOMPSON, U.S.D.J.